IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY WAYNE EWALT,

                      Plaintiff,                                   CV-08-6180-ST

        v.                                       OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                      Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Jeffrey Ewalt ("Ewalt"), seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 USC §§ 401-33. This court has jurisdiction under 42 USC § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). For the reasons that follow the Commissioner's decision is AFFIRMED.

1 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Ewalt was born in 1956 and initially filed an application for DIB at the age of 48 on June 2, 2004, alleging disability since April 28, 2004.  Tr. 84-87.  That application was denied initially on July 2, 2004, and there is no indication of any further proceedings on that application since the initial denial.  Tr. 84, 89.  Ewalt then filed the current application for DIB on April 18, 2005, alleging disability due to diabetes, hypertension, kidney and back problems, and arthritis since October 1, 2004.  Tr. 76-79, 92-93.  On June 2, 2005, Mary Anne Westfall, M.D., completed a Physical Residual Functional Capacity Assessment regarding Ewalt's application.  Tr. 235-42.  She concluded that Ewalt was capable of light work despite his obesity and degenerative disc disease of his cervical and lumbrosacral spine.  Tr. 242.  However, she later realized that she had been involved in the initial denial of Ewalt's first application and sent his file back for another, unbiased review.  Tr. 244.

Ewalt's application was denied initially on June 7, 2005.  Tr. 84.  On August 30, 2005, Sharon B. Eder, M.D., agreed that Ewalt was capable of light work.  Tr. 23, 243.  His claim was then denied on reconsideration on September 9, 2005.  Tr. 26-34.  Ewalt requested a hearing before an Administrative Law Judge ("ALJ").  ALJ William Horton conducted a hearing on January 8, 2008, at which he received testimony from Ewalt and from a vocational expert ("VE"), Jeffrey Tittlefitz.  Tr. 286-304.  The ALJ issued a decision on February 27, 2008, finding Ewalt's severe impairments precluded him from performing any past relevant work, but also finding that Ewalt was capable of performing other work in the economy as a packing line worker (DOT 753.687-038) or an electronics assembly worker (DOT 726.687-010), both light occupations.  Tr. 10-21, 302.

On April 18, 2008, the Appeals Council declined Ewalt's request for review, making the

ALJ's decision the final decision of the Commissioner.  Tr. 4-6; 20 CFR §§ 404.981, 422.210.

## FACTUAL BACKGROUND

Ewalt was 48 years old at the alleged onset of his disability and 51 years old at the time

of the hearing before the ALJ.  Ewalt was in an industrial accident in 1988 in which he was

thrown out of a large piece of equipment and injured a disc in his back.  Tr. 299-300.  On May

27, 2004, Ewalt was seen in an urgent care clinic complaining of chest pains.  Tr. 155-57.  Due

to a lack of insurance, Ewalt declined admission to the hospital and left against medical advice

despite a warning about "very severe risk factors for coronary artery disease."  Tr. 156-57.

Despite the earlier industrial accident, Ewalt worked as a gas station attendant between

1994-2004.[1]  Tr. 72-74, 290.  However, in June 2004, he was terminated after he pulled a

dangerous practical joke, putting gunpowder in an ashtray which a co-worker inadvertently

ignited with a cigarette butt, causing a flare up.  Tr. 270-71, 290-91.  In the months after his

termination, Ewalt unsuccessfully looked for work as a driver or in a sedentary retail position

and began seeking medical treatment at the Veterans' Administration.  Tr. 135, 214.

During this same time frame shortly after his termination, Ewalt experienced severe ankle

pain and could not walk.  Tr. 293.  A podiatrist prescribed orthotics which Ewalt uses every day.

*Id*.  Standing brings on pain which Ewalt believes would preclude his previous work as a gas

station attendant.  Tr. 112, 144,  296-97.  Ewalt is a diabetic and has psoriasis and dermatitis.

Tr. 293-94.  He experiences periodic skin infections in his armpits and groin which cause a

noxious odor and can take up to a month to control.  Tr. 113, 141, 144-45, 293-94.  Ewalt lives

---

[1] Although Ewalt testified that he was terminated in June 2005, his earnings records show no income in 2005.  Tr. 74.

with his brother and elderly mother.  Tr. 291.  They subsist on her Social Security income and

his food stamps.  Tr. 145, 271.  Ewalt is able to drive and takes turns with his mom and brother

doing the grocery shopping.  Tr. 291.  Grocery shopping can cause Ewalt mid and lower back

pain, which radiates into burning and numbing of his leg.  Tr. 292.  He takes ibuprofen if he

experiences moderate pain, and morphine if the pain becomes severe.  *Id*.  Prior to his condition

worsening, Ewalt was able to hunt and fish, go to the movies, and stand for longer periods of

time than five minutes.  Tr. 115.  Now he can stand for no more than five to ten minutes at a time

and can walk for no more than a quarter of a mile.  Tr. 112, 116, 134.

Ewalt is 5'10" tall and at the time of the hearing weighed 359 pounds.  Tr. 294.  He has

diabetes which is under control with medication.  Tr. 296-97.

Ewalt's mother, Lois Ewalt, filled out a third-party function report describing Ewalt's

daily activities.  Tr. 119-26.  She states that Ewalt "cooks from a stool," does "minor

housework,"  and is unable to walk very far or lift anything heavy.  Tr. 119.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of no less than 12

months[.]"  42 USC § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to

establish his or her disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*,

517 US 1122 (1996) (citations omitted).  The ALJ engages in a five-step sequential inquiry to

determine whether a claimant is disabled within the meaning of the Act.  20 CFR § 404.1520.

Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 CFR § 404.1520(b). If so, then the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment." 20 CFR § 404.1520(c). If not, then the claimant is not disabled.

At step three, the Commissioner determines whether the severe impairment "meets or equals" one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). 20 CFR § 404.1520(d). If so, then the claimant is disabled.

If the analysis proceeds beyond step three, the Commissioner must determine the claimant's residual functional capacity ("RFC"). The RFC is an assessment of work-related activities the claimant can perform on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR § 404.1545(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

Using the RFC, the Commissioner determines at step four whether the claimant can perform past relevant work. 20 CFR § 404.1520(e). If so, then the claimant is not disabled.

Finally, at step five, the Commissioner determines whether the claimant is able to perform other work in the national economy. 20 CFR § 404.1520(f). If not, then the claimant is disabled.

5 - OPINION AND ORDER

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. However, at step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## ALJ'S FINDINGS

At step one, the ALJ found that Ewalt had not engaged in substantial gainful activity since October 1, 2004, the alleged onset date of his disability. Tr. 15.

At step two, the ALJ found that Ewalt suffers from the severe impairments of obesity, mild degenerative disc disease with back pain, diabetes, dysthymia, and a personality disorder. *Id.* The ALJ found Ewalt's other physical impairments (skin rashes and dermatitis, ankle pain, history of hip surgery, cervical spondylosis, fallen arches for which he uses orthotics, complications from diabetes, and reports of chest pain) to be non-severe. Tr. 15-16.

The ALJ found at step three that Ewalt's impairments did not meet or equal a listed impairment. Tr. 16. Regarding Ewalt's credibility, the ALJ found his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible" and that his "alleged limitations exceed the objective medical evidence." Tr. 18-19. The ALJ found that Ewalt had the RFC to perform the light work, but could only occasionally stoop and climb ladders, ropes, and scaffolds, and should not have frequent interaction with the public. Tr. 16.

At step four, the ALJ found that Ewalt had past relevant work as a gas station attendant and parking lot attendant which he could no longer perform. Tr. 19.

Finally at step five, drawing upon the VE's testimony, the ALJ found that Ewalt's RFC enabled him to perform work in the national economy as a packing line worker or electronics assembly worker. Tr. 20. The ALJ therefore found Ewalt not disabled. Tr. 21.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004).  "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F3d 1211, 1214 n1 (9th Cir 2005) (internal quotation marks and citation omitted).  "It is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Orn v. Astrue*, 495 F3d 625, 630 (9th Cir 2007), quoting *Burch v. Barnhart*, 400 F3d 676, 679 (9th Cir 2005).  This court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Id,* citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Batson*, 359 F3d at 1193.

**DISCUSSION**

Ewalt challenges the Commissioner's decision on the grounds that the ALJ improperly discredited his testimony, the opinion of his treating doctor, and the findings of an examining psychologist.  As a result, Ewalt contends that the Commissioner failed to properly evaluate his RFC by considering the combined effects of his physical and mental impairments, and improperly found that he could perform other work in the economy.

///

## I.  Rejection of Doctors' Opinions

Ewalt challenges the ALJ's rejection of the opinions of two doctors: Dr. John P. Roberts, who completed a Physical Capacities evaluation form on April 13, 2007; and William A. McConochie, Ph.D., who performed a psycho diagnostic evaluation of Ewalt on September 25, 2007.

### A.  Dr. Roberts

Dr. Roberts prepared a Physical Capacities Evaluation worksheet on April 13, 2007.  Tr. 251-53.  Based on diagnoses of a herniated lumbar disc, spinal osteoarthritis, and morbid obesity, Dr. Roberts indicated that, per day, Ewalt could work four hours, sit for two hours, and stand and walk one hour each.  Tr. 251.  He also indicated that Ewalt was restricted to standing at one time for no more than 15 minutes, sitting at one time for no more than 60 minutes, and not working in areas of unprotected heights, marked changes in temperature or humidity, and dust, fumes, and gases.  Tr. 252-53.

The ALJ found Dr. Roberts' "entire evaluation [un]supported, other than by a reference to spinal osteoarthritis and a herniated disc."  Tr. 18.  Accordingly, the ALJ gave Dr. Roberts' assessment "scant weight" based on the lack of ongoing medical records supporting Ewalt's purported disc problem, a lack of any back surgery, and the lack of a referral to a back specialist.  Tr. 18.  The ALJ also noted the lack of evidence of a herniated disc or findings consistent with neurological compromise, no evidence of a pulmonary problem other than a reduced vital capacity, and no other finding to support the listing of environmental restrictions.  *Id.*

Ewalt relies heavily on the evaluation form completed by Dr. Roberts to show that he is unable to work for more than four hours per day, including two hours sitting and one hour each standing and walking. Tr. 251, 289. The form completed by Dr. Roberts consists only of a series of checked boxes, with no explanation whatsoever as to how Dr. Roberts reached his conclusions on any particular question. Tr. 251-52. Ewalt listed Dr. Roberts as one of his treating or examining doctors and testified that Dr. Roberts prescribed him morphine for his bouts with pain.[2] Tr. 147, 292. However, the record contains no chart notes completed by Dr. Roberts, and Dr. Roberts did not complete the "Remarks" section on the form, leaving only the checked boxes to cover the two-year period of time reportedly included in the evaluation provided in the form. An ALJ can reject a medical opinion that is "conclusory and unsubstantiated by relevant medical documentation." *Johnson v. Shalala*, 60 F3d 1428, 1432 (9th Cir 1995); *see also Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989) (ALJ may reject a treating doctor's opinion that is brief and conclusory with little in the way of clinical findings to support its conclusion); *Mason v. Shalala*, 994 F2d 1058, 1065 (3rd Cir 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). A careful review of the entire record supports the ALJ's conclusions about the lack of evidence to support Dr. Roberts' findings and provides an adequate basis on which to discount the conclusions of Dr. Roberts reflected in the worksheet.

---

[2] Ewalt also listed two other treating doctors (Drs. Heinrich and Kurtz) at the same address as Dr. Roberts, but the medical records contain no chart notes from either of those doctors or at the address listed by Ewalt. These three doctors could conceivably work for the VA, but none of their names appear as treating providers in the VA records. Tr. 254-67.

**B.  Dr. McConochie**

Next, Ewalt challenges the ALJ's rejection of the findings of Dr. McConochie.  On

June 4, 2007, while his request for a hearing before an ALJ was pending, Ewalt's attorney

notified the Social Security Administration that Ewalt may suffer from a mental impairment,

based on a variety of signs and symptoms including social isolation, suicidal thoughts,

tearfulness, nonrestorative sleep, significant weight gain, and inability to get along with

supervisors, other workers, and the general public.  Tr. 153.  A few months later on

September 25, 2007, Dr. McConochie, a licensed psychologist, performed a psycho diagnostic

evaluation of Ewalt and completed a Medical Source Statement of Ability to Do Work-Related

Activities (Mental).  Tr. 270-75, 281-83.

Dr. McConochie diagnosed Ewalt with adult onset dysthymic disorder, antisocial

personality disorder, a multitude of medical problems including obesity, knee and kidney

problems, and back pain.  Tr. 273-74.  Dr. McConochie found Ewalt's "primary psychological

limitations to work activity" to be "anger management and authority conflict problems," and he

recommended counseling.  Tr. 274.  He rated Ewalt as moderately impaired in the areas of

sustaining concentration and attention, persisting, and engaging in appropriate social interaction,

and markedly impaired in the ability to interact appropriately with supervisors or coworkers.

Tr. 274, 282.

The ALJ did not entirely adopt Dr. McConochie's assessment.  In particular, the ALJ

found only a moderate limitation in social interaction that would restrict him from more than

occasional public contact.  Tr. 19.  The ALJ based that conclusion on the lack of evidence of

problems in social interactions, other than the single unfortunate incident that resulted in his

termination in 2004, Ewalt's own reports that he got along well with others, and the fact that

Ewalt's past relevant work involved public contact. *Id*. As with the reasons given for the weight

given to the conclusions of Dr. Roberts, the reasons given by the ALJ for rejecting, in part,

Dr. McConochie's conclusions are borne out by the record.

## II. <u>Rejection of Ewalt's Testimony</u>

Ewalt also contends that the Commissioner improperly rejected his testimony. If a

claimant produces objective medical evidence of an underlying impairment that could reasonably

be expected to produce the symptoms alleged and no affirmative evidence of malingering exists,

the ALJ must assess the credibility of the claimant regarding the severity of symptoms. *Smolen

v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir

1986). The ALJ may discredit a claimant's testimony regarding the severity of symptoms by

providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir

1993); *Smolen*, 80 F3d at 1283.

The ALJ found Ewalt's testimony concerning the intensity, persistence, and limiting

effects of his symptoms not entirely credible. The ALJ acknowledged Ewalt's history of

diabetes, noting that it was treated with oral medication. Tr. 18. The ALJ also summarized

records from late 2004 through mid-2005 (Tr. 111-118, 214) in which Ewalt described carrying

firewood, walking for up to a mile, caring for his elderly mother, performing a variety of

household chores, personal care, and daily living activities, and denied psychological problems.

Tr. 19. The ALJ also reviewed medical records indicating that Ewalt's symptoms are generally

controlled with medications. Tr. 19, 168. Based on those records, the ALJ concluded that

Ewalt's alleged limitations exceeded the objective medical evidence. Tr. 19. *See Burnett v.*

*Barnhart*, 400 F3d 676, 681 (9th Cir 2005) (an ability to engage in daily living activities involving skills that can be transferred in the workplace is a legitimate basis for discrediting a claimant's testimony.)

Ewalt provides a listing of the impairments from which he suffers, and asserts that the ALJ failed to adequately consider the cumulative and combined effects of all of those health conditions. However, Ewalt does not cite any particular testimony or impairment which the ALJ disregarded without explanation. The most recent medical records support the ALJ's conclusion that many of Ewalt's impairments are controlled well with medication. Tr. 168, 270. With regard to the exertional limitations allegedly imposed by Ewalt's spinal issues, the ALJ's review of the record is thorough and accurate in its assessment that the record only supported mild degenerative changes and showed no ongoing severe exertional limitations or findings. In a new patient exam in September 2004, Ewalt denied back pain and joint pain or stiffness. Tr. 225. His spine was nontender, and his joints were negative for swelling, tenderness, or limitation. Tr. 226. Noting that imaging studies in January 2005 (Tr. 208-09) showed only "very mild" degenerative changes, the ALJ concluded that those "findings are not consistent with neural compromise and associated symptoms," but acknowledged that they "give some credence to [Ewalt's] allegations of back pain." Tr. 18. On September 25, 2007, Ewalt reported to Dr. McConochie being able to be on his feet for almost an hour if he is performing light activity. Tr. 273. A searching review of the record reveals that the ALJ credited those limitations supported by the objective medical evidence.

At the same new patient exam in September 2004, Ewalt denied any psychiatric issues. Tr. 225. Consistent with Ewalt's self-report, the record is devoid of any allegation or evidence

of a psychological impairment until Dr. McConochie's September 25, 2007 assessment shortly

before the hearing in this case.  As described above, the ALJ properly gave only partial credit to

that assessment.  Nothing in the record supports limitations more severe than those incorporated

into the RFC by the ALJ.

### III.  RFC and Other Work

Ewalt argues that the ALJ's RFC assessment does not take into account all of his

physical and mental impairments.  Ewalt contends that he suffers from high blood pressure, a

heart condition, dysthymic disorder with evidence of depressive symptoms, a personality

disorder, morbid obesity, diabetes, degenerative disc disease in his cervical, thoracic, and lumbar

spine, post-traumatic and osteoarthritic changes in his spine, and chronic pain.

The ALJ determined that Ewalt is capable of light work, except he may only occasionally

stoop and climb ladders, ropes, and scaffolds, and should not have frequent interaction with the

public.  Tr. 16.  The ALJ acknowledged that the record supports some degree of back pain and

exertional limitations imposed as a result of Ewalt's obesity.  Tr. 18.  However, based on his

conclusions about the assessments of Drs. Roberts and McConochie and the lack of other

evidence in the record, the ALJ found no showing of ongoing, severe exertional limitations, and

only moderate limitations in social functioning that restricts him from more than occasional

public contact.  Tr. 18-19.  As discussed above, the ALJ's conclusions regarding these doctors'

assessments and Ewalt's testimony are supported by the record.  Ewalt asserts that his condition

would worsen if he attempted to work and speculates that the stressors associated with a

competitive work environment would lead to frequent episodes of decompensation of an

extended duration.  However, absent supporting evidence in the record, this sort of conjecture is

not a sufficient basis on which to overturn the ALJ's conclusions.

Ewalt argues that the ALJ erred by failing to take into account the combined effect of all

his impairments, physical and mental.  However, the bulk of the limitations posed by Ewalt were

in fact adopted by the ALJ and incorporated into the RFC assessment, including Ewalt's reports

of back pain and the diagnoses of dysthymia and a personality disorder.  Tr. 15.  The ALJ found

Ewalt's diabetic complications to impose no significant limitations and also found that Ewalt's

reports of chest pain not severe.  Tr. 16.  Several of his conditions are amenable to treatment

with medication, and as such, provide no basis for finding disability.

Finally, Ewalt contends that the ALJ's findings regarding the availability of other work

fail to take into account legitimate restrictions imposed by his impairments.  That contention is

premised upon Ewalt's arguments that the ALJ improperly discounted his testimony and the

opinions of Drs. Roberts and McConochie.  As discussed above, those arguments are not

supported by the record.

In sum, the record reveals no basis on which to overturn the ALJ's decisions regarding

the weight of the testimony, Ewalt's RFC, or the availability of other work that Ewalt can

perform.

## **ORDER**

For the reasons stated above, the opinion of the Commissioner is AFFIRMED.

DATED this 10th day of July, 2009.

s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge